## Richmond

### JAMES BOYD v. JOSEPH E. DIGGS.

January 20, 1975.

Record No. 740419.

Present, All the Justices.

*Lawrence J. Lipka* (*Richman & Lipka*, on brief), for plaintiff in error.

*Conway W. Smith, III* (*Daniel W. Wilkinson, Jr.; West & Wilkinson*, on brief), for defendant in error.

Compton, J., delivered the opinion of the court.

The sole issue presented by the appeal of this personal injury action is whether the trial court erred in finding the plaintiff guilty of contributory negligence as a matter of law upon the ground that he violated Code § 46.1-190(e) which provides, in part, that one is guilty of reckless driving who shall " [o]vertake or pass any other vehicle proceeding in the same direction at any . . . intersection of highways . . . ."

In a jury trial, the court below entered summary judgment in favor of the defendant-appellee after sustaining the defendant's motion to strike made at the conclusion of the plaintiff-appellant's evidence. We affirm.

On September 4, 1971, about 11:30 a.m., a 1968 Oldsmobile four-door sedan operated by the plaintiff, James Boyd, collided

with a 1965 Dodge truck operated by the defendant, Joseph E. Diggs, near the intersection of 44th Street and Baughman Court in the City of Newport News, Virginia. The only additional description of the truck in the record is that it was "larger than a passenger car." The vehicles were travelling east on 44th Street, the plaintiff following the defendant. The accident occurred in a residential district in which the speed limit was 25 miles per hour.

Forty-fourth Street is a level, paved, two-way, east-west street about 48 feet wide. Parking was allowed on its north side but was prohibited on its south side. The travel lanes were not marked, but testimony indicated that there was "only one lane eastbound and one lane westbound on 44th." It is intersected on the north side by Baughman Court, another hard-surfaced street, to form a T intersection. A fence surrounding the "Shipyard building" runs east and west of the scene along the south side of 44th Street. Neither the width of Baughman Court nor the weather conditions at the time of the accident are shown by the record.

The plaintiff's evidence on the issue of liability consisted of the testimony of the plaintiff and the investigating police officer, and two photographs showing the damaged right front portion of his car.

The officer fixed the point of impact in 44th Street, from debris and skid marks, as being approximately 30 feet west of the intersection and 21 feet south of the 44th Street north curb line. During the course of the investigation, the plaintiff stated to the officer " 'I was going east on 44th Street in the left-hand lane. He made a left turn on me and I was not ready. He did not turn his signal light on.' " The defendant told the investigator that " 'I was going on 44th Street at approximately 25 miles per hour and thought I put on my signal light on [sic] to make a left turn. I did not see the car behind me.' " The only skid marks found by the officer were from the plaintiff's vehicle and measured approximately 27 feet lying in a northeasterly direction "from the eastbound lane into the westbound lane." The plaintiff's vehicle was damaged on the right front fender, hood and bumper. Although the officer found no damage to the truck, he testified the collision was "in the left rear portion of the truck." The plaintiff told the officer that he was travelling 30 miles per hour "at the time of the accident."

The plaintiff testified that he first observed the defendant's truck when the plaintiff made a turn onto 44th Street west of the scene of the accident and began following the truck at a distance of 50 feet. He testified that he maintained this distance for about 50 yards travelling about 20 miles per hour. When the defendant appeared to slow his speed to about 15 or 20 miles per hour, the plaintiff stated, "I put my signal light on and I went to pass him." He fixed his distance west of the intersection when he began to pass as being about 75 to 80 feet, although during his testimony he gave various other estimates ranging from 65 yards to 80 yards. The plaintiff further testified that after he began to pass, he increased his speed to 25 miles per hour and stated that the defendant ". . . keep pulling over after I got evened up with him and I keep pulling to the left. And after I see he was still coming over to the left, I put on brakes and blowed my horn. And then the truck just ran over the front end of my car."

On cross-examination, the plaintiff acknowledged his familiarity with the T intersection in question and the "layout" of 44th Street at the scene, including the fact that parking was prohibited on its south side. When asked " [w]hat did you think when he was slowing down; what did you think that the defendant was going to do at that point [since he was prohibited from making a right turn or parking]? " the plaintiff replied, "[w]ell, a lot of people do that sometime. He didn't have no signal light on or nothing like that. I checked the signal light before I passed—before I made an attempt to pass and he didn't have no signal light on. I just thought probably he was going—he just slowed down, probably looking for something under his seat or something like that." The plaintiff further stated that he could have completely passed the defendant prior to the intersection if the defendant had made a proper turn but, he said, the defendant made a "short turn." At another point in his cross-examination, the plaintiff stated "I pulled to the side and—I pulled on the side and followed him a little piece before I did pass and we got to the intersection before we have the collision—before we had the wreck. . . . [H]e turned about 30 feet from the intersection when we had the collision."

The plaintiff argues that the statute in question is not applicable here, because "the plaintiff's car, which was in the act of passing the truck, would have passed it before the intersection

and without collision, had not the truck borne to the left and struck it." He relies primarily on cases from other jurisdictions which are either factually inapposite or based on dissimilar statutory provisions.

We hold the statute to be applicable under these facts. In the first place, the statute is directed to one who shall "overtake or pass." In this context, "overtake" means ". . . to . . . catch up with in pursuit or motion . . . ." Webster's Third New International Dictionary 1611; "pass" means ". . . to go by or move past . . . ." *Id.* at 1649. Moreover, the statute proscribes overtaking or passing "at" not "in" an intersection of highways.[1] "In," of course, means a location within the statutory boundary of the intersection.[2] "At" indicates ". . . presence in, on, or near . . . ." Webster's Third New International Dictionary 136. "Near," in this context, means within a reasonable distance, which distance depends on the particular facts and circumstances of each case. Annot. 53 A.L.R. 2d 850, 867.

The facts of this case demonstrate the type of conduct the statute was designed to prevent, that is, action which causes two vehicles to run abreast at an intersection, a "position fraught with the greatest danger." *Holland* v. *Edelblute,* 179 Va. 685, 689-90, 20 S.E.2d 506, 508 (1942).

It is uncontroverted that the plaintiff was in the act of overtaking and passing. But did this maneuver take place near and within a reasonable distance of this intersection and, therefore, *at* the intersection? The answer is affirmative. The point of impact was about 30 feet from the intersection. The front of the defendant's truck at impact was much nearer the intersection or was, perhaps, within the intersection. The plaintiff established his distance from the intersection when he commenced to overtake and pass as being within 80 feet thereof, travelling at 20 to 25 miles per hour. The speed differential of the vehicles was never greater than 5 to 10 miles per hour until the moment of impact. Considering the distance of the vehicles from the intersection and each other when the plaintiff's

[1] "Street" is included within the definition of "highway." Code § 46.1-1(10).

[2] "Intersection" is defined as "[t]he area embraced within the prolongation or connection of the lateral curb lines, or, if none, then the lateral boundary lines of the roadways of two highways which join one another at, or approximately at, right angles, or the area within which vehicles travelling upon different highways joining at any other angle may come in conflict." Code § 46.1-1(11) (a).

564

maneuver commenced, and in view of their speed, it is apparent that had they continued east without colliding, the plaintiff would have been in the act of overtaking or passing as they crossed into the intersection, that is, crossed the west curb line of Baughman Court. This is passing *at* an intersection, within the meaning of the statute in question.

Viewing this evidence in the light most favorable to the plaintiff and drawing from his evidence all proper inferences, we hold that reasonable men cannot differ that the plaintiff violated Code § 46.1-190(e) and, further, that such violation proximately contributed to cause the accident. *Loving* v. *Mason,* 206 Va. 613, 617-18, 145 S.E.2d 131, 134 (1965).

*Affirmed.*